UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL STANDEN, | No. 2:16-cv-1267-EFB |
| Plaintiff, | |
| v. | ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and Disability Insurance Benefits ("DIB") under Titles II of the Social Security Act. The parties filed cross-motions for summary judgment. ECF Nos. 18 & 23. For the reasons discussed below, plaintiff's motion for summary judgment is denied (ECF No. 18) and the Commissioner's motion is granted (ECF No. 23). Further, an order to show cause issued on March 7, 2017, is discharged. ECF No. 17.

I. BACKGROUND

A. Procedural History

Plaintiff filed an application for a period of disability and DIB, alleging that he had been disabled since May 9, 2012. Administrative Record ("AR") at 131-137. Plaintiff's application was denied initially and upon reconsideration. *Id.* at 89-93, 96-101. On August 20, 2014, a

1

hearing was held before administrative law judge ("ALJ") Odell Grooms. *Id.* at 31-63. Plaintiff was represented by counsel at the hearing, at which he and a vocational expert testified. *Id.*

On November 17, 2014, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i) and 223(d) of the Act.[1] *Id.* at 19-26. The ALJ made the following specific findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2. The claimant has not engaged in substantial gainful activity since May 9, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.* Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq.* Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

2

3. The claimant has the following severe impairments: lumbar/cervical degenerative disc disease status post lumbar surgery (20 CFR 404.1520(c)).

\* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

\* \* \*

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can occasionally climb ramps and stairs but never climb ladders, ropes, and scaffolds. He can occasionally stoop and crawl. He must be allowed to alternate between sitting or standing once an hour for 1-2 minutes.

\* \* \*

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

\* \* \*

7. The claimant was born on [in] 1961 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant number in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

\* \* \*

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 9, 2012, through the date of this decision (20 CFR 404.1520(g)).

*Id.* at 21-26.

Plaintiff's request for Appeals Council review was denied on April 11, 2016, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-6.

B. <u>Plaintiff's Vocational and Medical History</u>

According to his application for benefits, plaintiff was born on May 14, 1961 and, at the time of his hearing before the ALJ, was 53 years old. *Id.* at 37, 149. In terms of education, plaintiff completed the twelfth grade and had undergone real estate training and licensing. *Id.* at 162. He had been employed by Mariposa County Public Works as a building, park, and road maintenance worker from 1993 to 2004. *Id.* at 152. From 2010 until 2012, he was employed as a house keeper and care giver at an assisted living community. *Id.*

On May 9, 2012, plaintiff sustained a back injury while carpet cleaning at Alta Manor assisted living community. *Id.* at 45. This was not plaintiff's first brush with back pain and injury. In May of 2000, he fell approximately fifteen feet while working for Mariposa County Public Works at Yosemite National Park. *Id.* at 398. After the fall, plaintiff complained of "severe back pain" and limited range of motion in his back. *Id.* In 2001, an MRI led to a diagnosis of degenerative disc disease and treatment by way of epidural injections. *Id.* at 399-400. In 2006, his back pain was exacerbated by a car accident. *Id.* at 405.

Even before the May 2012 injury, plaintiff had been seeing Dr. Vinay Reddy for management of his back pain. *Id.* at 265-67. Following the May 2012 injury, Dr. Reddy noted that plaintiff represented his back pain as severe – nine out of ten without medication – and that he suffered pain sitting, standing, and walking. *Id.* at 274. On September 7, 2012, plaintiff was examined by Dr. Tyler Smith, an orthopedic surgeon, and it was determined that "surgery would be in [plaintiff's] best interest at reducing [plaintiff's] sympomatology. *Id.* at 527.

On July 1, 2013, plaintiff underwent a spinal fusion of his L4-L5 vertebrae. *Id.* at 509. The surgery was deemed successful (*id.* at 510-11), but plaintiff was deemed to be temporarily totally disabled until June 2014. *Id.* at 579-82, 600-20.

II. <u>LEGAL STANDARDS</u>

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were

4

applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III. <u>ANALYSIS</u>

Plaintiff argues that the ALJ erred by: (1) rejecting opinions from his treating physicians; and (2) failing to consider the side effects caused by his medication.

    A. <u>The ALJ Provided Legally Sufficient Reasons for Rejecting Opinions from Plaintiff's Treating Physicians</u>

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester*, 81 F.3d at 834. Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81

F.3d at 831. In contrast, a contradicted opinion of a treating or examining medical professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. *Id*. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

There are four medical opinions relevant to this case. As noted above, the treating physicians – Drs. Smith and Reddy opined that plaintiff was disabled after his July 2013 surgery. AR at 579-82, 600-20. By contrast, two non-examining physicians – Drs. Charles Fina and S. Jaituni – opined that plaintiff was capable of reduced light work. *Id.* at 69-72, 83-85. In his decision, the ALJ determined that the opinions of Drs. Smith and Reddy should be granted little evidentiary weight. *Id.* at 24. Plaintiff now argues that the ALJ erred in doing so.

        1. <u>Dr. Reddy's Opinions</u>

In his opinion, the ALJ notes that Dr. Reddy was plaintiff's primary treating physician in 2012 and 2013 and that he offered numerous reports "indicating total but temporary disability for much of the period at issue." *Id.* The ALJ then offered three reasons for according little evidentiary weight to Reddy's opinions. First, the ALJ concluded that Reddy's opinions were "not entirely supported by objective medical findings." *Id.* The ALJ noted that despite subjective complaints of pain, there was evidence that plaintiff had full motor strength and few ambulatory issues. *Id.* Second, the ALJ found that "Dr. Reddy's findings were recorded before the claimant's most recent surgery in July 2013 and therefore did not consider the significant improvement in the claimant's symptoms post-surgery." *Id.* Third, the ALJ stated that Dr. Reddy's opinion that plaintiff could not participate in full-time, competitive employment was an issue reserved to the Commissioner and not a medical opinion. *Id.*

/////

Plaintiff takes issue with the second rationale for according Dr. Reddy's opinion little weight. He argues that the ALJ misconstrued the record when he stated that all of Dr. Reddy's opinions preceded the July 2013 surgery and did not account for plaintiff's significant improvement after that procedure. The record establishes that Dr. Reddy saw plaintiff on no less than seven occasions after the surgery and continued in his capacity as plaintiff's primary treating physician. *Id.* at 596-620. During these appointments, Dr. Reddy made repeated note of plaintiff's improvement (*id.*), but also continued to find him "temporarily totally disabled" until the seventh appointment on June 25, 2014. *Id.* at 596-616. Despite the ALJ's erroneous statement, it is far from obvious that the ALJ actually failed to consider this evidence. The ALJ cited "Exhibit 19F" multiple times in his opinion. *Id.* at 24. Exhibit 19F contains *only* documents dating from December 23, 2013 to June 25, 2014. *Id.* at 594-620. The majority of these documents pertain to post-surgical appointments with Dr. Reddy during which plaintiff's improving condition is noted. *Id.* at 596-99, 603-05, 610-12, 617-20. Thus, plaintiff's argument on this point is overstated.

Regardless, even if the ALJ overlooked Dr. Reddy's post-surgical opinions, the error was harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("We have long recognized that harmless error principles apply in the Social Security Act context."). The Ninth Circuit has held that "an ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination." *Id.* (internal citation marks omitted). In so doing, the court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id.* The Ninth Circuit has found the harmless error analysis applicable to similar record omissions. *See Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (holding that the harmless error analysis applied "to assess the impact of the ALJ's failure to even mention [a treating physician] or [his] notes, let alone its failure to give 'specific and legitimate reasons that are supported by substantial evidence'" that are supported by substantial evidence for rejecting a treating source's medical opinion." (citing *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014)).

Examination of the record which the ALJ failed to consider indicates that it supports, rather than detracts, from his conclusion that plaintiff underwent substantial medical

7

improvement after his surgery and was capable of light work. On December 23, 2013, Dr. Reddy noted that plaintiff had "much less severe back and left leg pain." AR at 596. He also noted that plaintiff's pain level with medication was only two out of ten and that his ambulatory issues were mild. *Id.* On January 22, 2014, Dr. Reddy stated that plaintiff was continuing to recover from surgery and was now riding his bike two to three times a week, was able to do housework, and had greatly decreased pain in his back and leg. *Id.* at 600-01. On March 19, 2014, Dr. Reddy noted that: (1) plaintiff's pain was decreasing; (2) he had started riding his motorcycle again; and (3) that he helped his wife with housecleaning. *Id.* at 606. Dr. Reddy decreased plaintiff's pain medication prescription at this appointment. *Id.* at 607. On June 25, 2014, Dr. Reddy stated that plaintiff was walking, riding a bike, and doing household duties. *Id.* at 617. Although plaintiff noted that his pain was higher than it had been in previous appointments- eight out of ten without medication and four out of ten with – Dr. Reddy nevertheless determined that plaintiff was capable of working so long as he did not lift more than ten to fifteen pounds and did not engage in frequent bending or stooping. *Id.* at 620. These findings were not inconsistent with the ALJ's determination that:

> [Plaintiff] is capable of meeting the basic demands of a restricted range of light work. Specifically, he can occasionally climb ramps and stairs but never climb ladders, ropes, and scaffolds. He can occasionally stoop and crawl. He must be allowed to alternate between sitting or standing once an hour for 1-2 minutes.

*Id.* at 24. Accordingly, the ALJ's error was inconsequential to the ultimate nondisability determination and, therefore, harmless. Further, the obvious accord between the primary treating physician's last dated opinion and the ALJ's findings convince the court that the harmlessness in this case is "clear and not a borderline question" and remand for reconsideration is inappropriate. *See McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011). In reaching this conclusion, the court notes that it does not affirm the ALJ's decision on grounds other than those invoked by the ALJ. Instead, the court simply finds that the records that the ALJ allegedly failed to consider did not contradict his nondisability determination and, thus, any failure to consider them was harmless.

/////

/////

*See Marsh*, 792 F.3d at 1172 (the district court did not offend *Sec. & Exch. Comm'n v. Chenery Corp.* 332 U.S. 194, 196 (1947)[2] where it found that the record materials the ALJ failed to consider did not contradict his determination).

### 2. Dr. Smith's Opinions

On December 10, 2013, Dr. Smith submitted a residual functional capacity questionnaire ("report") which opined that plaintiff was precluded from bending, lifting, and twisting activities and was not capable of performing full-time work in the national economy. AR at 579-582. The ALJ acknowledged this opinion, but concluded that it was not consistent with the medical evidence of record. *Id.* at 24. Specifically, the ALJ found that Dr. Smith's report appeared to "largely concern the [plaintiff's] restricted functioning during the surgical recovery period without fully accounting for the clear reports of subsequent improvement that are supported by objective exam findings and diagnostic imaging." *Id.*

Plaintiff argues that this conclusion was error for a number of reasons. First, he contends that the ALJ ignored the work restrictions Dr. Smith assigned plaintiff after examining him on October 9, 2013. ECF No. 18 at 8. Plaintiff notes that the October restrictions limited him to lifting less than ten pounds, completely precluded bending at the waist, and prevented plaintiff from either sitting or standing for more than one hour continuously. *Id.* Second, he argues that the hypothetical questions posed to the vocational expert did not include the October 9, 2013 limitations prescribed by Dr. Smith. *Id.* at 9. Third, he argues that the reason provided by the ALJ to reject the Dr. Smith's December 10, 2013 report was error. *Id.* These arguments are unpersuasive.

First, the ALJ's failure to explicitly mention the October 9, 2013 opinion in his decision was not error. Given that the ALJ evaluated Dr. Smith's December report – which detailed the restrictions Smith thought necessary at that later time- the ALJ was not required to also weigh the October restrictions. *See Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (the ALJ

/////

---

[2] Holding that a reviewing court may only affirm an agency action on "the grounds invoked by the agency."

9

"need not discuss *all* evidence presented, but instead must only "explain why 'significant evidence has been rejected.'") (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)).

Next, the ALJ's decision to give little weight to Dr. Smith's report is supported by the record. Dr. Smith's report is controverted by the opinions of Drs. Fina and Jaituni – the non-examining State agency physicians – both of whom found plaintiff was not disabled. AR at 69-73, 82-87. And although a non-examining physician's opinion is not, standing alone, sufficient reason to reject the opinion of a treating physician, *see Lester*, 81 F.3d at 831, the overall medical record in this case is largely inconsistent with Dr. Smith's report. Treatment records reveal that, subsequent to December 2013, plaintiff's condition improved substantially. The ALJ cited exhibit 19F for this proposition which, as noted *supra*, contains various progress notes documenting plaintiff's post-surgical improvement. AR at 596-620. Indeed, the June 2014 progress note from Dr. Reddy finds that plaintiff is ready for work with the restrictions that he: (1) not lift greater than ten to fifteen pounds; (2) not bend frequently; and (3) not stoop frequently. *Id.* at 620. These findings closely track the ALJ's determination that plaintiff is capable of light work with limited restrictions on ramps and stairs, total restrictions on ladders, ropes, and scaffolds, and an allowance that he be allowed to alternate between sitting and standing for a short period once every hour. *Id.* at 24. In fact, the record indicates that, as of May 2, 2014, Dr. Smith envisioned that Dr. Reddy might reevaluate and, ultimately terminate, plaintiff's temporary total disability in June of that year.[3] *Id.* at 591 ("At his last visit with Dr. Reddy, the [plaintiff] was put on temporary total disability *to be continued until June*.") (emphasis added).[4] Thus, the ALJ's

---

[3] This particular document was contained in Exhibit 18F, which the ALJ also cited for the proposition that "[i]n January 2014, [plaintiff] reported he was doing far better than before surgery." AR at 23.

[4] The Commissioner also argues that the ALJ permissibly rejected Drs. Smith and Reddy's opinions because they were inconsistent with plaintiff's reported daily activities. ECF No. 23 at 8. The ALJ, however, did not rely on this reason for rejecting their treating opinions, and this court's review is limited to the rationale provided by the ALJ. *See Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require [the court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (a district court is "constrained to review the reasons the ALJ asserts").

decision to give little weight to Dr. Smith's report is supported by specific and legitimate reasons that are themselves supported by substantial evidence. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) ("If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.").

In turn, the court rejects plaintiff's argument that the ALJ erred by failing to include his October 2013 limitations in the hypotheticals posed to the vocational expert. The hypothetical posed to the vocational expert contained all of the limitations which the ALJ ultimately found credible and supported by substantial evidence. Compare the ALJ's ultimate determination that:

> [Plaintiff] is capable of meeting the basic demands of a restricted range of light work. Specifically, he can occasionally climb ramps and stairs but never climb ladders, ropes, and scaffolds. He can occasionally stoop and crawl. He must be allowed to alternate between sitting or standing once an hour for 1-2 minutes.

AR at 24. With the hypothetical posed to the vocational expert:

> Assume this individual could perform work at the light exertional level. This individual could occasionally climb ramps and stairs, could never climb ladders, ropes, and scaffolds, could occasionally stoop and crawl. This individual must be allowed to alternate between sitting or standing once an hour for one to two minutes. Would there be work for such an individual in the national economy?

*Id.* at 59-60. There was no error here. *See Bayliss*, 427 F.3d at 1217 ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record. The ALJ's reliance on testimony the VE gave in response to the hypothetical therefore was proper.").

Finally, the court takes note of the recent Ninth Circuit decision in *Trevizo v. Berryhill*, No. 15-16277, ___ F.3d ___, 2017 U.S. App. LEXIS 17979, 2017 WL 4053751 (9th Cir. 2017). Among other things, *Trevizo* took issue with the ALJ's failure to consider each of the factors identified in 20 C.F.R. § 404.1527(c) in rejecting the opinion of a treating physician. *Trevizo*, 2017 App. LEXIS 17979 at *23-24. The *Trevizo* court held:

> [T]he ALJ erred by failing to apply the appropriate factors in determining the extent to which the opinion should be credited. Though she suggested that Dr. Galhotra's opinion was "inconsistent

> with the other substantial evidence in [Trevizo's] case record," such that it should not be given dispositive weight, 20 C.F.R. § 404.1527(c)(2), the ALJ did not consider factors such as the length of the treating relationship, the frequency of examination, the nature and extent of the treatment relationship, or the supportability of the opinion, id. § 404.1527(c)(2)-(6). *This failure alone constitutes reversible legal error.*

*Id.* (emphasis added). Plaintiff cites the 404.1527(c) factors in his argument regarding the ALJ's rejection of Smith's report,[5] and appears to argue that the ALJ failed to sufficiently credit them. ECF No. 18 at 8. Prior to *Trevizo*, the Ninth Circuit had never given any indication that an ALJ was required to *explicitly* set forth in rote fashion an analysis of each of the 404.1527(c) factors. *See Hoffman v. Berryhill*, No.: 16-cv-1976-JM-AGS, 2017 U.S. Dist. LEXIS 136353, *6, 2017 WL 3641881 (S.D. Cal Aug. 24, 2017) (adopted on 9/14/2017 at *Hoffman v. Berryhill*, No.: 16-cv-1976-JM-AGS, ECF No. 26). ("In explaining his rejection of Dr. Kane's opinion, the ALJ did not explicitly analyze each of these § 404.1527(c) factors. The Ninth Circuit has never expressly held that an ALJ should."). This question, if answered in plaintiff's favor, would require that this matter be remanded. Thus, the court will take it up.

The court concludes that it should not read into *Trevizo* a requirement that ALJs explicitly recite an analysis of each § 404.1527(c) factor in each of their decisions. Rather, *Trevizo* requires that the record reflect that the ALJ actually considered and applied the appropriate factors. A broader reading would be a significant departure from prior Ninth Circuit precedent and the *Trevizo* court gave no indication that it intended such a break. Indeed, the Social Security regulations themselves do not express such a requirement and instead direct that the factors are to be *considered*. *See* 20 C.F.R. § 404.1527(c) ("Unless we give a treating source's medical opinion controlling weight under paragraph (c)(2) of this section, we *consider* all of the following factors in deciding the weight we give to any medical opinion."). The record here reflects the appropriate factors were properly considered, even if all are not repeated in rote fashion.

/////

/////

---

[5] Plaintiff does not cite *Trevizo*, but he could not be expected to given that the decision was issued well after he filed his motion.

12

In *Hoffman*, the district court harmonized *Trevizo* with prior precedent in a way this court finds persuasive:

> Happily, *Trevizo* can be harmonized with the regulations, prior case law, and established practice. We must simply adopt a more restrictive—and less intuitive—reading of this sentence: "As the ALJ noted, *Dr. Galhorta is Trevizo's 'primary treating physician,'* having treated her at least 22 times between 2008 and 2012." 862 F.3d at 997 (emphasis added). This Court concludes that the phrase "As the ALJ noted" applies only to the main clause (italicized) and not to the remainder of the sentence. In other words, in *Trevizo* the ALJ failed to note the treating relationship's length or frequency, and also failed to demonstrate that those factors were otherwise considered, which was error. *Interpreted thus, Trevizo does not demand a full-blown written analysis of all the regulatory factors; it merely requires some indication that the ALJ considered them.*

*Hoffman*, 2017 U.S. Dist. LEXIS 136353, *10-11. (emphasis added).

The court concludes that the ALJ's decision in this case indicates that he considered the factors with respect to Dr. Smith. He noted Smith's medical specialization, the examining and treating relationship between plaintiff and Smith, and considered the consistency of Smith's opinion with the medical record as a whole. AR at 24. The opinion also provides an indication that the ALJ considered the length of the treating relationship insofar as he took note of the 'surgical period' and cited to Exhibit 19F – which contains the relevant records of plaintiff's post-surgical improvement. *Id.* Finally, the court concludes that the ALJ's comments regarding the nature[6] of Dr. Smith's opinion is sufficient indication that the ALJ considered the supportability of the opinion in the "surgical recovery period" in which it was provided.

    B.    <u>The ALJ Did Not Err in Failing to Address the Side Effects Caused by Plaintiff's Prescription Medications</u>

Next, plaintiff argues that the ALJ erred in failing to consider the side effects of his prescription medications. ECF No. 18 at 12. Social Security regulations and policy require that an ALJ consider the "type, dosage, effectiveness, and side effects of any medication [a claimant has] taken to alleviate [ ] pain or other symptoms." *See* 20 C.F.R. § 404.1529(c)(3)(iv); SSR 96-7p, 1996 SSR LEXIS 4, at *8. "Numerous cases, however, have held that an ALJ need not

---

[6] The ALJ noted that "Dr. Smith's report appears to largely concern the claimant's restricted functioning during the surgical recovery period . . . ." AR at 24.

13

address medication side effects where there is but passing mention of them . . . ." *Norman v. Astrue*, No. EDCV 09-1747-JEM, 2010 U.S. Dist. LEXIS 124876, *14 (C.D. Cal. Nov. 23, 2010) (citing cases). Indeed, it is the claimant's burden to show that a medication caused a debilitating impairment. *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1995). To meet that burden, the claimant must provide "evidence of side effects severe enough to interfere with [her] ability to work." *Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001) (declining to accept an allegation that medication caused drowsiness as such evidence). Here, plaintiff has failed to do so.

The record demonstrates that plaintiff was advised of the potential side-effects of his medications. *See, e.g.,* AR at 310, 597, & 601. No medical evidence in the record indicates that he actually experienced these side-effects, however. Plaintiff cites Dr. Smith's December 2013 report as evidence that plaintiff actually experienced side-effects of drowsiness and dizziness, but review of the record does not support his claim. The residual functional capacity questionnaire completed by Smith asks the physician to identify the side-effects of any prescribed medication that might have implications for working. *Id.* at 580. The questionnaire does not actually ask whether the patient is experiencing or has experienced those symptoms. Accordingly, the court interprets Dr. Smith's notation of "drowsiness" and "dizziness" as a reference to the *potential* side effects of the prescribed medication. Indeed, one of the medical records from 2012 indicates that plaintiff was taking Norco and Soma – two of the medications he now cites in his motion – without side effects. *Id.* at 289. In relevant part: "[plaintiff] has temporary improvement with medications and requests a refill on Norco, Soma, Medrox, and Elavil. He is also taking Docuprene. He states these medications do help decrease his pain level and improve his function without side effects." *Id.* Accordingly, the court finds that the ALJ did not err in failing to address the side-effects of plaintiff's medication.

IV. <u>Show Cause Order</u>

On March 7, 2017, the court entered an order directing plaintiff to show cause, in writing, why sanctions should not be imposed for his failure to file a timely motion for summary judgment. ECF No. 17. Plaintiff's counsel responded to the show cause order on March 23,

2017. ECF No. 20. He states that the failure to file a timely summary judgment motion was caused by his oversight in failing to enter the appropriate deadline in his calendar. *Id.* at 1. The court finds that: (1) the Commissioner was not prejudiced by the tardiness of plaintiff's motion; (2) the delay did not have a significant impact these proceedings; and (3) that there was no evidence of bad faith on the part of plaintiff or his counsel. *See Lemoge v. United States*, 587 F.3d 1188, 1192 (9th Cir. 2009) (describing the standard for determining whether neglect is excusable). Thus, it finds that plaintiff's failure to file a timely summary judgment motion was excusable neglect. The court will discharge the show cause order and decline the imposition of sanctions.

V. CONCLUSION

Based on the foregoing, it is hereby ORDERED that:

1. The show cause order (ECF No. 17) is DISCHARGED;

2. Plaintiff's motion for summary judgment (ECF No. 18) is DENIED;

3. The Commissioner's cross-motion for summary judgment (ECF No. 23) is GRANTED; and

4. The Clerk is directed to enter judgment in the Commissioner's favor.

DATED: September 25, 2017.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE